IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| MICHAEL SHELIGA, | ) | |
|---|---|---|
| | ) | CIVIL ACTION NO. 3:14-209 |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| BOROUGH OF NORTHERN | ) | |
| CAMBRIA, CAMBRIA COUNTY | ) | |
| TROOPER HUBER, PENNSYLVANIA | ) | |
| STATE POLICE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I. Introduction

This civil rights case stems from the search and arrest of Plaintiff Michael Sheliga. Presently before the Court are two motions: (1) Defendants' motion to dismiss for Plaintiff's failure to prosecute (ECF No. 24) and (2) Plaintiff's motion for reconsideration of the Court's July 31, 2015, order (ECF No. 28). For the reasons stated below, the Court will **DENY** Defendants' motion to dismiss for Plaintiff's failure to prosecute and will **DENY** Plaintiff's motion for reconsideration.

### II. Jurisdiction

The Court has jurisdiction over the federal constitutional claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391(b).

### III. Background

Plaintiff initiated this action asserting federal constitutional claims under 42 U.S.C. § 1983 and violations of Pennsylvania law. In his complaint, Plaintiff seeks compensatory and punitive damages, a declaratory judgment that it is not unlawful to knock on people's doors, and an injunction against Defendants prohibiting them from arresting Plaintiff for knocking on the doors of residences in Pennsylvania. (ECF No. 1.) Plaintiff alleges the following facts in the complaint, which the Court will accept as true for the sole purpose of deciding the pending motions.

On March 15, 2014, Plaintiff visited a Ukrainian Orthodox Church in Barnesboro, Pennsylvania, and toured the Northern Cambria area. (*Id.* ¶¶ 5-6.) At approximately 4:00 p.m., Plaintiff knocked on a door in Allport, Pennsylvania, to ask for information about a "'company store' building." (*Id.* ¶ 7.) At approximately 5:00 p.m., Plaintiff returned to Barnesboro, lawfully parked his vehicle on a public road, and then walked through the town for seventy-five to ninety minutes. (*Id.* ¶¶ 8-9.)

When Plaintiff returned to his vehicle, he was confronted by a state police officer who used his vehicle to block Plaintiff's vehicle and identified himself as "Trooper Huber." (*Id.* ¶ 10.) Defendant Huber repeatedly informed Plaintiff that he would be arrested if he ever knocked on any other doors. (*Id.* ¶ 11.) When Plaintiff argued that he had a constitutional right to knock on doors, Defendant Huber stated that he would be arrested and demanded Plaintiff's driver's license. (*Id.* ¶¶ 11-12.) After Plaintiff gave Defendant Huber his driver's license, Defendant Huber demanded Plaintiff's telephone number. (*Id.* ¶¶ 12-13.) Plaintiff stated that he did not want to provide his telephone

number because he lived with his parents and did not want them to receive telephone calls. (*Id.* ¶ 13.) However, when Defendant Huber stated that he needed Plaintiff's telephone number to complete his investigation, Plaintiff complied with the request. (*Id.* ¶ 14.) Defendant Huber then unlawfully searched Plaintiff's pockets and, after finding nothing unlawful, handcuffed Plaintiff and forced him to stand in front of the center of his vehicle. (*Id.* ¶¶ 15-16.) Defendant Huber entered his vehicle, where he remained for approximately five minutes. (*Id.* ¶ 17.) When Defendant Huber got out of his vehicle, he lectured Plaintiff "on the evils of door knocking." (*Id.* ¶ 18.) At this time, an officer from Barnesboro-Northern Cambria, who is believed to have been Henry Reeger, arrived and stated that he would arrest Plaintiff if he came back and knocked on people's doors. (*Id.* ¶ 19.)

At a Northern Cambria council meeting in April 2014, Officer Reeger stated that people have a right of privacy and that he would arrest Plaintiff if he heard that Plaintiff knocked on anyone's door. (*Id.* ¶ 21.) When Plaintiff complained about Defendant Huber's conduct, Sergeant Overdorf of the state police stated that Defendant Huber had not acted unlawfully. (*Id.* ¶ 22.) Sergeant Overdorf informed Plaintiff that his speech while knocking on doors was not protected speech. (*Id.*) He also stated that Plaintiff's telephone number was demographic information and that Plaintiff would have been held at the barracks if he had not provided it. (*Id.* ¶ 23.)

Plaintiff filed a two-count complaint against Defendants on September 23, 2014. (ECF No 1.) In Count I, Plaintiff appears to assert a claim under 42 U.S.C. § 1983 and states that the state police and the police officers of Northern Cambria are inadequately

3

trained for the following reasons: (1) a citizen has a right to knock on doors; (2) law enforcement officers do not have the right to arrest anyone for failing to answer questions or for failing to provide a telephone number; (3) law enforcement officers do not have the right to handcuff individuals simply because they are unknown; and (4) the right to "pat down" an individual does not include the right to search pockets. (*Id.* ¶ 26(a)-(d).) Plaintiff states that he was unlawfully arrested when Defendant Huber handcuffed him without probable cause, that his constitutional rights were violated when Defendant Huber threatened to arrest him if he ever knocked on doors again, and that Defendant Huber's search of his pockets was unlawful. (*Id.* ¶¶ 27-29.) Count II of the complaint simply asserts: "The actions of the Defendant Trooper Huber are also in violation of the laws of Pennsylvania, for which the Plaintiff seeks compensatory damages and punitive damages." (*Id.* ¶ 31.) However, the complaint does not specify which Pennsylvania laws Defendant Huber violated, or what specific actions he took that constitute violations of those laws.

On November 20, 2014, Defendant Borough of Northern Cambria filed a motion to dismiss, and Defendants Huber and the Pennsylvania State Police filed a partial motion to dismiss on November 21, 2014. On January 12, 2015, Plaintiff filed a brief in which he consented to the dismissal of all Defendants, with the exception of Defendant Huber. He also consented to the dismissal of his claims for injunctive and declaratory relief. On February 6, 2015, the Court granted Plaintiff's counsel's motion to withdraw as Plaintiff's attorney and entered a stay for forty-five days to allow Plaintiff time to obtain substitute counsel. (ECF No. 22.) On July 31, 2015, the Court granted Defendant Borough of

4

Northern Cambria's motion to dismiss and granted Defendants Huber and the Pennsylvania State Police's partial motion to dismiss. (ECF No. 27 at 3.) With the exception of Plaintiff's claims for unlawful arrest and unlawful search against Defendant Huber, the Court dismissed all other claims and Defendants from the action with prejudice. (*Id.*)

Before the Court entered its July 31, 2015, order, Defendants Borough of Northern Cambria, Cambria County, Trooper Huber, and the Pennsylvania State Police filed a joint motion to dismiss for Plaintiff's failure to prosecute, (ECF No. 24), along with a brief in support of their motion (ECF No. 25), on April 21, 2015. Plaintiff filed a brief in opposition to Defendants' motion on June 8, 2015. (ECF No. 26.) On August 18, 2015, Plaintiff filed a motion for reconsideration of the Court's July 31, 2015, order (ECF No. 28), to which Defendants have not responded. These matters are now ripe for adjudication.

## IV. Applicable Law

### A. Motion for Reconsideration

A court may grant a motion for reconsideration if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); *see also A&H Sportswear Co. v. Victoria's Secret Stores, Inc.*, No. 94-CV-7408, 2001 U.S. Dist. LEXIS 11488, at *3 (E.D. Pa. May 1, 2001). Motions for reconsideration provide district courts the opportunity to correct their own alleged errors;

5

they are not intended to provide litigants "a second bite at the apple." *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995); *see also Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002) ("[A] motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant.").

### B. Motion to Dismiss for Failure to Prosecute

Pursuant to Federal Rule of Civil Procedure 41(b), a district court may dismiss an action—either *sua sponte* or upon a motion—"[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order." FED. R. CIV. P. 41(b); *Abulkhair v. New Century Fin. Servs.*, 467 Fed. Appx. 151, 153 (3d Cir. 2012). The United States Court of Appeals for the Third Circuit has held that a district court should consider and balance the following factors when determining whether dismissal is appropriate:

> (1) the extent of the *party's* personal *responsibility*; (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith*; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions*; and (6) the *meritoriousness* of the claim or defense.

*Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (emphasis in original). The Third Circuit has recognized that "*Poulis* [does] not provide a magic formula" for balancing the six factors and that "not all of the *Poulis* factors need be satisfied in order to dismiss a complaint." *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992); *Briscoe v. Klaus*, 538 F.3d 252, 263 (3d Cir. 2008). Rather, a district court has discretion to determine

6

whether dismissal is warranted, and the court should make its decision "in the context of [its] extended contact with the litigant." *Mindek*, 964 F.2d at 1373.

V. Discussion

A. Plaintiff's Motion for Reconsideration

Plaintiff requests that the Court reconsider its July 31, 2015, order dismissing all of Plaintiff's claims and Defendants from the action, with the exception of Plaintiff's claims for unlawful arrest and unlawful search against Defendant Huber. (ECF No. 28 at 1.) In support of his request, Plaintiff states that his counsel did not provide him with a copy of the filed complaint until he withdrew from the case. (*Id.*) Plaintiff further states that he was unaware that his counsel filed a brief consenting to the dismissal of Defendants and his claims for declaratory judgment and injunctive relief until two months after the brief was filed. (*Id.* at 1-2.) He asserts that the Court erred by dismissing all Defendants except for Defendant Huber from the action with prejudice and dismissing Plaintiff's claims for declaratory judgment and injunctive relief with prejudice because he was not afforded an opportunity to amend his complaint. (*Id.* at 2.)

The Court will deny Plaintiff's motion for reconsideration because he has not shown a manifest error of law. Plaintiff was represented by counsel when he stated that he "consents to the dismissal of his claims for injunctive and declaratory relief, which has the practical effect of dismissing all of the defendants except Trooper Huber." (ECF No. 14 at 5.) It is well settled that "each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the

7

attorney." *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962) (internal quotations omitted). Although Plaintiff's prior counsel has now withdrawn, Plaintiff "voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Id.* at 633-34; *see also Poulis*, 747 F.2d at 868. Plaintiff has failed to establish that an intervening change in the controlling law occurred, that new evidence is now available, or that the Court's dismissal was a manifest error of law or fact. *See Max's Seafood Café by Lou-Ann, Inc.*, 176 F.3d at 677. The Court must therefore deny Plaintiff's motion for reconsideration. *See, e.g., Burton v. Prison Health Servs., Inc.*, No. 92-CV-574, 1993 U.S. Dist. LEXIS 3781, at *2-3 (E.D. Pa. Mar. 24, 1993) (denying the plaintiff's motion for reconsideration and dismissing the complaint with prejudice because "the defendant's motion to dismiss . . . was 'unopposed' in the legal sense, since plaintiff had not denied or refuted any of the factual allegations in the motion to dismiss"); *see also Hamilton v. Murray*, No. 2:15-CV-2085, 2015 U.S. Dist. LEXIS 139646, at *2 (D.S.C. Oct. 14, 2015) (noting that the Fourth Circuit affirmed the district court's denial of the plaintiff's motion for reconsideration on the basis that she agreed to dismiss a counterclaim); *In re Prempro Prods. Liab. Litig. Sharon Bland v. Wyeth, Inc.*, No. 4:03-CV-1507, 2009 U.S. Dist. LEXIS 29908, at *1-2 (E.D. Ark. Apr. 7, 2009) (denying the plaintiff's motion for reconsideration after she consented to dismissal).

**B.     Defendants' Motion to Dismiss for Failure to Prosecute**

In support of their motion to dismiss for Plaintiff's failure to prosecute, Defendants argue that the complaint must be dismissed with prejudice for two reasons. (ECF No. 25 at 1.) First, Defendants state that the Court entered a forty-five-day stay on

February 3, 2015, to allow Plaintiff time to obtain substitute counsel. (*Id.* at 1-2.) By Plaintiff's deadline of March 20, 2015, he failed to secure counsel and failed to advise the parties and the Court of his inability to secure counsel. (*Id.* at 2.) Second, Defendants claim that after Plaintiff's counsel withdrew from the case, Plaintiff was sent a notice that the Initial Rule 16 Case Management Conference was scheduled for April 7, 2015. (*Id.*) Defendants contend that Plaintiff failed to appear at the conference and did not make any attempt to contact the parties, their counsel, or the Court to advise of his inability to attend. (*Id.*)

In applying the *Poulis* factors, Defendants state that Plaintiff is solely responsible for complying with the Court's orders. (*Id.* at 4.) They claim that they were prejudiced by Plaintiff's failure to attend the conference because they remain "in limbo" over litigation and "have continued to endure the anxiety and pressures associated with civil litigation." (*Id.*) Defendants assert that Plaintiff has a history of dilatoriness and acted willfully or in bad faith because he failed to secure new counsel and failed to attend the conference without providing any notice to the Court and counsel. (*Id.* at 5.) Defendants state that because Plaintiff has had ample time to obtain substitute counsel, the only sanction that will be effective is dismissal. (*Id.*) They argue that Plaintiff's claims are meritless and must be dismissed. (*Id.* at 6.)

In response, Plaintiff argues that Defendants misrepresent the Court's February 3, 2015, order because it did not mandate that he obtain counsel or take further action if he was unable to secure substitute counsel. (ECF No. 26 at 2.) His understanding of the Court's order is that he may represent himself. (*Id.*) Plaintiff also explains that he did not

9

receive a copy of the Court's notice of the April 7, 2015, conference and therefore did not attend. (*Id.* at 1.) In applying the *Poulis* factors, Plaintiff states that he should not bear responsibility for failing to attend the conference because he did not receive notice of it. (*Id.* at 3.) Plaintiff argues that his failure to attend the conference did not prejudice Defendants and does not constitute a history of dilatoriness. (*Id.* at 3-4.) Plaintiff contends that his conduct was not willful because he attempted to obtain counsel and did not have notice of the conference. (*Id.* at 4-5.) Plaintiff states that dismissal of his complaint is not an effective sanction and that his claims are meritorious. (*Id.* at 5-6.)

The Court must reject as meritless Defendants' first argument that Plaintiff has failed to prosecute his case because he did not obtain substitute counsel. In its February 3, 2015, order, the Court stated that "a stay is entered in this case for 45 days to allow the Plaintiff time to obtain substitute counsel." (ECF No. 22.) The Court did not indicate that Plaintiff was *required* to obtain substitute counsel. Because there is no requirement that a plaintiff be represented by counsel in an action arising under 42 U.S.C. § 1983, the Court would not have entered such an order. Accordingly, the Court cannot conclude that Plaintiff has failed to prosecute his case because he has not obtained substitute counsel.

The Court must also reject as meritless Defendants' second argument that Plaintiff has failed to prosecute his case because he did not attend the Initial Rule 16 Case Management Conference on April 7, 2015. According to the docket entries of this case, the Court entered a text order setting the conference on February 6, 2015. However, the order was not sent to Plaintiff. As a result, Plaintiff did not have notice of the conference and could not have provided the Court or the parties with notice of his inability to attend.

10

Moreover, a case-management order has not yet been entered in this case. Plaintiff therefore cannot be held responsible for failing to commence the discovery process. The Court will therefore deny Defendants' motion to dismiss for Plaintiff's failure to prosecute the case.

## VI. Conclusion

For the reasons stated above, the Court will deny Defendants' motion to dismiss for Plaintiff's failure to prosecute and will deny Plaintiff's motion for reconsideration of the Court's July 31, 2015, order. An Initial Rule 16 Scheduling Conference will be scheduled for February 4, 2016, at 2:30 p.m.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| MICHAEL SHELIGA, | ) | |
|---|---|---|
| | ) | CIVIL ACTION NO. 3:14-209 |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| BOROUGH OF NORTHERN | ) | |
| CAMBRIA, CAMBRIA COUNTY | ) | |
| TROOPER HUBER, PENNSYLVANIA | ) | |
| STATE POLICE, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

**AND NOW**, this 14th day of January, 2016, upon consideration of Defendants' motion to dismiss for Plaintiff's failure to prosecute (ECF No. 24) and Plaintiff's motion for reconsideration of the Court's July 31, 2015, order (ECF No. 28), and in accordance with the attached memorandum, **IT IS HEREBY ORDERED** as follows:

(1) Defendants' motion to dismiss for Plaintiff's failure to prosecute (ECF No. 24) is **DENIED**.

(2) Plaintiff's motion for reconsideration of the Court's July 31, 2015, order (ECF No. 28) is **DENIED**.

**IT IS FURTHER ORDERED** that an Initial Rule 16 Scheduling Conference is scheduled for February 4, 2016, at 2:30 p.m.

BY THE COURT:

*[signature: Kim R. Gibson]*

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE